■ FRANK J. CHIECO, Respondent, v DIANE M. CHIECO, Appellant.—In a proceeding pursuant to Family Court Act § 842 for an order of protection, the wife appeals from an order of the Family Court, Suffolk County (Freundlich, J.), entered January 17, 1989, which, after a hearing, granted that relief.

Ordered that the order is reversed, on the facts, without costs or disbursements, and the proceeding is dismissed.

We are in accord with the appellant's contention that the petitioner—a Suffolk County Police Officer—failed to establish his entitlement to a permanent order of protection premised upon claims that his wife directed profanity at him and, on occasion, engaged in largely innocuous physical contact during verbal disputes which posed no threat to the petitioner's safety or that of the parties' two children. The Family Court erred in determining that the petitioner's testimony was credible under the circumstances presented and in concluding that the appellant had committed a family offense. More disturbing, however, is the inference to be drawn from the record that the petitioner's application was attributable not to any real or perceived need for protection, but rather, was undertaken in order to intimidate his wife, who had previously commenced an action for a divorce on the ground of cruel and inhuman treatment, which the petitioner contested.

It is undisputed that immediately prior to the hearing on the petitioner's application for a permanent order of protection, the petitioner's wife was arrested at the petitioner's behest and jailed for 24 hours by officers from the petitioner's

own precinct, for allegedly violating an ex parte temporary order of protection the petitioner had personally obtained the day before from Judge McNulty. Significantly, the temporary order explicitly commanded that the police were *not* to make an arrest for threats of violence towards the petitioner. The record further reveals that prior to his wife's arrest for allegedly violating the temporary order, the petitioner, although he resided with the appellant, had neither served it upon her nor made any attempt to inform her that it had been obtained. The petitioner's subsequent application for a permanent order of protection was premised, in part, upon (1) his wife's alleged violation of the unserved, and therefore ineffective, temporary order, and (2) the misconduct which allegedly took place prior to the appellant's arrest.

In rendering its determination that the petitioner had established his entitlement to a permanent order of protection, the Family Court (Freundlich, J.), credited the petitioner's assertions regarding his wife's alleged physical conduct with respect to only two of the four incidents it considered: (1) the incident which took place immediately prior to his wife's arrest, and then only to the extent of making a factual finding that the wife had utilized profanity and "slammed a door" on the petitioner, and (2) an incident occurring a few days earlier during which the petitioner's wife allegedly bumped up against the petitioner's chest in a narrow hallway as the two argued. We find neither of the two foregoing instances of alleged intentional misconduct to be supported by the credible evidence adduced at the hearing.

At the hearing, the appellant wife testified convincingly that the alleged acts of misconduct subsequently credited by the Family Court were, as the record suggests, minor, isolated incidents which were neither intentionally committed, nor part of a course of conduct calculated to annoy or harass the petitioner. To the contrary, the circumstances surrounding the application made by the petitioner, who testified that he wished to remain married to the appellant, give rise to the opposing inference that his actions may have been intended to act as a " 'wedge to gain advantage in matrimonial proceedings pending elsewhere' " *(Matter of Arlyn T. v Harold T.,* 107 Misc 2d 672, 674).* Specifically, the appellant denied that she had intentionally bumped up against the petitioner or slammed a door on him, and further testified that any profanity she may have used was provoked by her husband's prior verbal abuse, in particular, his penchant for calling her a "bitch". Moreover, the appellant credibly testified with regard

to the door slamming incident, that she had closed the front door because her husband walked outside without closing it, permitting cold air to blow into the house, where she and the parties' youngest child were still dressed in their pajamas. The appellant also denied bumping up against her husband, recalling instead, an incident during which her husband backed up against her as she proceeded down a narrow hallway.

Although the petitioner provided a conflicting account of the foregoing events, his conduct in causing his wife's arrest and incarceration for violating an order whose existence he never disclosed to her, evidences an absence of good faith, and casts doubt on his credibility. It is notable in this respect that the Family Court itself declared that it was "quite troubled" by the appellant's arrest. Yet, the court failed to consider the implications of the petitioner's conduct in assessing his credibility. Where the disputed allegations of wrongdoing appear to be contrived and suggest that the petitioner was seeking to manufacture instances of spousal misconduct, the compelling inference to be drawn is that the court's process has been impermissibly invoked as a sword, rather than as a shield *(cf., Matter of Arlyn T. v Harold T., supra)*. In short, by awarding the petitioner a permanent order of protection under the circumstances presented, the Family Court lent sanction to the petitioner's course of conduct and exacerbated, rather that ameliorated, the parties' marital discord. Accordingly, and for the foregoing reasons, the order appealed from is reversed. Bracken, J. P., Kooper, Harwood and Balletta, JJ., concur.